O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYLOR FARMS CALIFORNIA, INC., a California corporation, | Case No. 19-cv-8924 DDP (GJSx) |
| Plaintiff, | **ORDER GRANTING INTERVENING PLAINTIFF MONTEREY MUSHROOMS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART, DENYING IN PART DEFENDANT ADAM COOPER'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| COOPER'S COLD FOODS, INC., a California corporation; and, ADAM COOPER, an individual, | |
| Defendants. | |
| MONTEREY MUSHROOMS, INC., a California corporation; and, FARMERS LINK, INC., a California corporation, | [Dkts. 58, 64] |
| Intervening Plaintiffs, | |
| vs. | |
| COOPER COLD FOODS, INC., a California corporation; and, ADAM COOPER, an individual, | |
| Defendants. | |

Presently before the court are Intervening Plaintiff Monterey Mushrooms' and Defendant Adam Cooper's cross motions for summary judgment. (Dkts. 58, 64.) Having

considered the submissions of the parties and heard oral argument, the court grants Intervening Plaintiff's motion, and grants in part, denies in part Defendant's motion, and adopts the following order.

**I. BACKGROUND**

On November 7, 2019, Intervening Plaintiff Monterey Mushrooms, Inc. ("Monterey Mushrooms") filed a Complaint-in-Intervention asserting a breach of contract claim and seeking enforcement of payment under the Perishable Agricultural Commodities Act ("PACA") against Defendant Cooper Cold Foods, Inc. ("Cooper Cold Foods") and Defendant Adam Cooper ("Cooper"). (*See* dkt. 10.) Monterey Mushrooms is a California corporation engaged in buying and selling wholesale quantities of perishable agricultural commodities, or "produce," and operates under the PACA. (Dkt. 67, Jenkins Decl. ¶ 7.) Cooper Cold Foods was a produce distributor founded in 1966 also operating under the PACA. (Dkt. 61, Cooper Decl. ¶¶ 3-4.) Cooper was the President, CEO, sole director, officer, and shareholder of Cooper Cold Foods from approximately 2010 until it ceased operations in 2019. (*Id.* ¶ 5.)

Between April 24, 2019 and August 18, 2019, Monterey Mushrooms and Cooper Cold Foods entered into various transactions in which Monterey Mushrooms sold, and Cooper Cold Foods purchased, eighty shipments of produce in the principal amount of $241,744.26. (Jenkins Decl. ¶¶ 9-10; Dkt. 66, Ex. 1, Cooper Cold Foods Admissions ## 3, 7.) Cooper Cold Foods received and accepted the produce without objection. (Jenkins Decl. ¶¶ 9-10; Cooper Cold Foods Admissions # 4.) Monterey Mushrooms sent invoices to Cooper Cold Foods stating the agreed prices for the produce purchased. (Jenkins Decl. ¶ 11; Cooper Cold Foods Admissions # 6.) Each invoice included the required statutory statement to preserve Monterey Mushrooms' rights as a PACA trust beneficiary. (Jenkins Decl. ¶ 14; Cooper Cold Foods Admissions # 8.) The parties do not dispute that Cooper Cold Foods failed to pay for the produce it purchased and received from Monterey Mushrooms. (Jenkins Decl. ¶ 17; Cooper Cold Foods Admissions # 12.)

Monterey Mushrooms presently moves for summary judgment on all claims against Cooper Cold Foods and summary judgment against Cooper individually for breach of fiduciary duty for failure to maintain PACA trust assets. (Dkt. 65, Monterey Mushrooms' MSJ.) Monterey Mushrooms maintains that Cooper is secondarily liable for Cooper Cold Foods' debt because the undisputed facts demonstrate that Cooper was in a position to control Cooper Cold Foods. Cooper does not dispute that during the relevant time at issue, he had control and authority of Cooper Cold Foods. Instead, Cooper opposes Monterey Mushrooms' motion for summary judgment, and moves for summary judgment in his favor, asserting that the facts demonstrate that neither he nor Cooper Cold Foods breached their fiduciary duty under PACA because they did not "misuse" any PACA assets. (*See* dkt. 59, Cooper MSJ; Dkt. 76, Cooper Opp.) Cooper argues that on June 26, 2019, prior to dissolving, Cooper Cold Foods was burglarized and that a safe that was in Cooper Cold Foods' office was stolen. (Cooper Decl. ¶ 14; Dkt. 62, Pivtorak Decl., Ex. 2, Gaytan Depo. at 23-24.) Cooper testified that at the time the safe was stolen, the safe contained approximately $500,000 in cash which was PACA trust property and other valuable heirlooms and collectibles. (Cooper Decl. ¶ 15, Exs. 2-4.) According to Cooper, the PACA trust property in the safe would have been sufficient to pay PACA beneficiaries. (*Id.* ¶ 20.)

Cooper also presents evidence that between April 15, 2019 and Cooper Cold Foods' closing, Cooper Cold Foods used its assets only to pay employee salaries and ordinary business expenses. (*Id.* ¶ 17, Exs. 5, 6.) At the time of closing, Cooper Cold Foods' remaining assets were $130,000. (*Id.* ¶ 18.) Cooper also presents evidence that Cooper Cold Foods was owed $60,000 in unpaid PACA accounts receivable from restaurants which it was unable to recover. (*Id.* ¶ 22, Ex. 9.) Cooper Cold Foods' outstanding PACA debt, to approximately twenty PACA creditors, totaled $522,684.81. (*Id.* ¶ 25, Ex. 8.) Cooper contends that Cooper Cold Foods attempted to distribute its remaining assets pro rata to unpaid PACA sellers. (*Id.* ¶ 24.)

While Monterey Mushrooms does not dispute that Cooper Cold Foods was burglarized, Monterey Mushrooms disputes Cooper's evidence as insufficient to establish that the safe contained $500,000 in PACA trust property. Monterey Mushrooms also disputes Cooper's assertion that the money contained in the safe would have been used to pay Monterey Mushrooms based on Cooper's testimony that the funds were saved for a "rainy day" and, prior to being stolen in June, had not been used to pay Monterey Mushrooms' invoices which at the time were already past due. (*See* Cooper Depo. at 75:15-30; 76:1-8.) Monterey Mushrooms does not dispute that Cooper Cold Foods paid employee salaries and ordinary business expenses.

**II. LEGAL STANDARD**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*,

4

477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel have an obligation to lay out their support clearly. *Carmen v. San Francisco Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." *Id.*

**III. DISCUSSION**

**A. Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq.***

**a. Failure to Pay Promptly and Failure to Maintain PACA Trust Assets**

"Enacted in 1930, PACA had the intent of 'preventing unfair business practices and promoting financial responsibility in the fresh fruit and produce industry.'" *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 282 (9th Cir. 1997) (quoting *Farley and Calfee, Inc. v. United States Dep't of Agric.*, 941 F.2d 964, 966 (9th Cir. 1991)). In 1984, Congress amended PACA to "to add an additional remedy: the perishable commodities or proceeds from the sale of those commodities are held in trust by the dealer for the benefit of the unpaid seller until full payment is made." *Id.* (citing 7 U.S.C. § 499e(c)(2)); *see also*, *S & H Packing & Sales Co. v. Tanimura Distrib., Inc.*, 883 F.3d 797, 802 (9th Cir. 2018) (discussing PACA's legislative history). Section 499e(c)(2) of PACA provides, in part, as follows:

> [p]erishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or

5

>    proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents. . . .

7 U.S.C. § 499e(c)(2).

PACA also provides that it is unlawful for a dealer to "to fail or refuse truly and correctly to account and make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had; . . . or to fail to maintain the trust as required under section 499e(c) of this title." 7 U.S.C. § 499b. By federal regulation, a PACA trustee is "required to maintain trust assets in a manner so that the trust assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities. Any act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful and in violation of section [499b]." 7 C.F.R. § 46.46(d)(1).

Cooper Cold Foods does not dispute that Monterey Mushrooms is a valid PACA trust beneficiary, that Cooper Cold Foods qualifies as a commission merchant, dealer, or broker under the PACA, that the transactions at issue involved interstate commerce, that Monterey Mushrooms provided Cooper Cold Foods written notice of its intent to preserve the benefits of the PACA trust, nor does it dispute that it has not provided full payment to Monterey Mushrooms. (*See* dkt. 76, Cooper Opp. at 5-6.) Instead, Cooper Cold Foods contends that the PACA claims against it must fail because it reasonably attempted to keep its business afloat, and payment of a pro rata share of Cooper Cold Foods' remaining trust assets to Monterey Mushrooms is sufficient to avoid liability under PACA. (Cooper Opp. at 5-6 (citing *Farm-Wey Produce, Inc. v. Wayne L. Bowman Co., Inc.*, 973 F. Supp. 778, 784 (E.D. Tenn. 1997).)

However reasonable Cooper Cold Foods' business decisions may have been, Cooper Cold Foods nonetheless failed to provide *full and prompt payment* to Monterey Mushrooms for eighty shipments of produce which were PACA trust assets. Cooper Cold Foods does not cite any controlling authority for the proposition that a pro rata share of remaining assets is sufficient to satisfy its obligations under the PACA. As discussed in detail below, *Farm-Wey* is contrary to the law of this Circuit and appears to be contrary to federal regulations. 7 C.F.R. § 46.46(d)(1) (a trustee is "required to maintain trust assets in a manner so that the trust assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities."). There is no genuine dispute that Cooper Cold Foods did not maintain the PACA trust assets as required by the PACA. At the time Cooper Cold Foods' debt became due, Cooper Cold Foods did not have freely available trust assets to fulfill its obligations to Monterey Mushrooms. Cooper Cold Foods attempts to avoid this conclusion asserting that trust assets which were not directed to trust beneficiaries were directed to reasonable expenses—salaries and ordinary business expenses—however, PACA's "duty to maintain trust assets is far-reaching." *S & H Packing*, 883 F.3d at 803. "Courts have held that '[a] PACA trustee may use trust assets to pay ordinary business expenses *as long as* it does not do so at the expense of its PACA beneficiaries, or in any way impair the ability of the beneficiaries to collect money owed in connection with produce sales.'" *Sun Hong Foods, Inc. v. Outstanding Foods, Inc.*, No. CV1910121PSGMAAX, 2020 WL 2527048, at *3 (C.D. Cal. Mar. 26, 2020) (quoting *C.H. Robinson Co. v. Alanco Corp.*, 239 F.3d 483, 488 (2d Cir. 2001)) (collecting cases). In this case, Cooper Cold Foods' payments of salaries and ordinary business expenses was at the expense of the trust beneficiaries.[1]

---

[1] Cooper also argues that Monterey Mushrooms "waived its right to rely on the terms of the statute by agreeing late and partial payments in its dealings with Cooper Cold Foods." (Reply at 3-4.) However, the sole evidence of this alleged course of dealings is Cooper's declaration in which he states that "Because of the length of their ongoing

7

The court concludes that there are no genuine issues of material fact. The evidence demonstrates that Cooper Cold Foods failed to promptly provide payment and failed to maintain PACA trust assets. The court grants summary judgment to Monterey Mushrooms on Counts II through V of the Complaint-in-Intervention.

### b. Breach of Fiduciary Duty against Adam Cooper

Monterey Mushrooms next moves for summary judgment on the breach of fiduciary duty claim under the PACA against Cooper. (Monterey Mushrooms MSJ at 14-18.) Monterey Mushrooms argues that because Cooper Cold Foods breached the PACA trust by failing to maintain "freely available assets to satisfy Monterey Mushrooms' PACA trust claim," and the undisputed facts show that Cooper was in a position to control the PACA trust assets and actually controlled the disbursement of the PACA trust assets, Cooper is secondarily liable to Monterey Mushrooms for breach of fiduciary duty. (*Id.* at 18.)

Cooper opposes secondary liability arguing that the standard for breach of fiduciary duty under PACA is "misuse of funds" and that for secondary liability, Monterey Mushrooms must show that Cooper had the "ability to control the corporate trustee's assets *and* direct[ed] those assets in a manner that constitutes a breach of fiduciary duty." (Cooper MSJ at 6 (citing *Farm-Wey Produce, Inc. v. Wayne L. Bowman Co., Inc.*, 973 F. Supp. 778, 782 (E.D. Tenn. 1997)).) According to Cooper, a breach of fiduciary duty can only occur where there is "evidence of active wrongdoing". (Cooper MSJ at 10.) Cooper argues that there is no evidence of wrongdoing and notes that he stored PACA

---

business relationship, Monterey would often allow Cooper Cold Foods to make payments outside of the 'stated terms' on Monterey's invoices. Monterey regularly allowed Cooper Cold Foods to make payments that were late and for less than the full amount owed." (Cooper Decl. ¶ 7.) Drawing all reasonable inferences in favor of Cooper Cold Foods, this conclusory statement is insufficient to create a triable issue of fact.

8

trust property in a large, secured safe and administered that property with the same care as his personal property, therefore, Cooper argues, he cannot be liable for the stolen PACA trust property that was kept in the safe.  (*Id.* at 7.)

As an initial matter, the court addresses Cooper's reliance on *Farm-Wey*, a 1997 Eastern District Court of Tennessee decision.  In that case, agricultural suppliers sought to hold the president and sole shareholder of a defunct purchaser of produce liable under the PACA for breach of fiduciary duty. *Farm-Wey Produce*, 973 F. Supp. at 779.  At the time of that case, there was only one Circuit—the Ninth Circuit—to have directly addressed the issue of individual liability under the PACA. *Id.* at 782 (discussing *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280 (9th Cir. 1997)).  The Eastern District Court of Tennessee rejected the Ninth Circuit's reasoning and other district courts' reasoning which, like the Ninth Circuit, had also concluded that an officer could be secondarily liable.  *See id.*  The district court found that "there is no indication in the statute itself, the associated regulations, or the legislative history that Congress intended to abrogate substantial portions of state corporation and contract law by making a large class of individuals sureties on the contracts of produce buyers." *Id.* at 783.

*Farm-Wey* is directly contrary to the Ninth Circuit's decision in *Sunkist*.  *See Sunkist*, 104 F.3d 280.  In *Sunkist*, the Ninth Circuit held that "individual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under the Act."  *Id.* at 283.  Cooper Cold Foods has not cited any subsequent Ninth Circuit decision overturning *Sunkist*.  Therefore, *Sunkist* remains controlling precedent. The court also notes that, since *Farm-Wey*, other Circuits have also concluded that under the PACA, individual liability may attach to persons in position to control. *See Patterson Frozen Foods v. Crown Foods Int'l*, 307 F.3d 666, 667-68 (7th Cir. 2002); *GolmanHayden Co., Inc. v. Fresh Source Produce Inc.*, 217 F.3d 348, 351 (5th Cir. 2000); *Hiller Cranberry Products, Inc. v. Koplovsky*, 165 F.3d 1, 9 (1st Cir. 1999); *see also Red's Market v. Cape Canaveral Cruise*

9

*Line, Inc.*, 181 F. Supp. 2d 1339, 1343-44 (M.D. Fla.), aff'd, 48 Fed. App'x. 328, 2002 WL 2001204 (11th Cir. 2002); *Consumers Produce Co. v. M & T Chirico, Inc.*, No. 04-CV-295C(SR), 2005 WL 2420355, at *2 (W.D.N.Y. Sept. 30, 2005) (citing *Weis-Buy Services, Inc. v. Paglia*, 411 F.3d 415, 421 (3d Cir. 2005)).  Therefore, *Farm-Wey* is neither controlling nor does the court find it to be persuasive.

Cooper also misstates the law for breach of fiduciary duty under the PACA.  To find an individual secondarily liable for breach of fiduciary duty, a plaintiff need not demonstrate "misuse" of PACA assets.  Instead, a "PACA trust in effect imposes liability on a trustee, whether a corporation or a controlling person of that corporation, who uses the trust assets for *any purpose* other than repayment of the supplier."  *Sunkist*, 104 F.3d at 283 (emphasis added) (quoting *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1993)).  "This includes use of the proceeds from the sale of perishables for legitimate business expenditures, such as the payment of rent, payroll, or utilities."  *Morris Okun*, 814 F. Supp. at 348.  "[A] plaintiff[ ] need only show that the assets of the licensed commission merchant, dealer, or broker are insufficient to satisfy the PACA liability."  *Superior Sales W., Inc. v. Revival Enterprises, Inc.*, No. SACV13352JSTJPRX, 2013 WL 12136966, at *3 (C.D. Cal. June 18, 2013) (quoting *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 707 (2d Cir. 2007)).  Individuals will not be secondarily liable, however, "merely because they served as corporate officers or shareholders." *Shepard v. K.B. Fruit & Vegetable*, 868 F. Supp. 703, 706 (E.D. Pa. 1994).  Rather, individuals may be liable "if they had some role in causing the corporate trustee to commit the breach of trust." *Sunkist*, 104 F.3d at 283.  "A court considering the liability of the individual may look at the closely-held nature of the corporation, the individual's active management role and any evidence of the individual's acting for the corporation." *Id.* (internal citation and quotation marks omitted).

The court notes that the concerns behind the PACA are fairly unique.  The fair value of perishable goods, unlike other products, diminishes rapidly.  There is no real

10

opportunity to mitigate any loss. There is no opportunity to take the produce back. In recognition of this highly evaporative state of the product, Congress has drawn a bright line—a purchaser must pay the debt owed when due. The reasons for failure to pay are irrelevant and personal liability is going to attach to whoever provides the leadership and makes those management decisions, or else companies can avoid this situation by the usual corporate means which is not what was intended with the PACA.

Here, the undisputed evidence demonstrates that Cooper controlled Cooper Cold Foods' day-to-day operations, made all decisions concerning Cooper Cold Foods' finances, had authority to enter into loan transactions and borrow funds on behalf of Cooper Cold Foods, controlled the disposition of Cooper Cold Foods' inventories of produce, controlled the proceeds from sales of Cooper Cold Foods' inventories of produce, and controlled payments to Cooper Cold Foods' creditors, including payment of invoices for purchases of produce from its suppliers. (Adam Cooper Admissions ## 10-17.) Additionally, on August 21, 2019, as President and sole director, Cooper signed and filed Cooper Cold Foods' Certificate of Election to Wind Up and Dissolve. (Adam Cooper Admissions ## 19-20.) The evidence indisputably establishes that Cooper was in a position to control and actually controlled Cooper Cold Foods.

Cooper appears to argue that, even if he could be held secondarily liable because of his position of control, he did not breach his fiduciary duty because he kept the PACA trust assets in a safe which was subsequently burglarized. (*See* Cooper MSJ at 6-7.) Evidence of the burglary and the stolen safe in June 2019 does not create a genuine issue of material fact. The court agrees that there is insufficient evidence establishing that the safe contained $500,000 in *PACA trust property* and that Cooper Cold Foods would have used the funds to pay Monterey Mushrooms. Assuming that the safe did contain the PACA trust property, the transactions at issue occurred between April 2019 and August 2019. At the time of the burglary, in June 2019, Monterey Mushrooms' invoices from April 2019 were already past due and there is no evidence suggesting that Cooper Cold

11

Foods' paid any past due amount. (Cooper Depo. at 75:10-25.) Cooper could not explain why Cooper Cold Foods did not make prompt payment on the invoices which were past due prior to the burglary. (*Id.*) Additionally, the evidence also demonstrates that after the burglary, Cooper Cold Foods continued to receive shipments from Monterey Mushrooms. (*See* Dkt. 67-3 at 51-81.) Cooper Cold Foods received and accepted approximately thirty shipments of produce between July 1, 2019 to August 18, 2019. (*Id.*) These subsequent shipments were PACA trust assets. Therefore, the burglary in June 2019 could not have been the reason, or even a reason, for these PACA trust assets to have been dissipated or otherwise not freely available.

As discussed above, Cooper Cold Foods' payments for salaries and ordinary business expenses were at the expense of the trust beneficiaries. (Cooper Depo. at 80:8-13.) These payments are evidence of a breach of fiduciary duty. *See Sun Hong Foods*, 2020 WL 2527048, at *3 ("Courts have held that '[a] PACA trustee may use trust assets to pay ordinary business expenses *as long as* it does not do so at the expense of its PACA beneficiaries, or in any way impair the ability of the beneficiaries to collect money owed in connection with produce sales." (quotations and citations omitted)). Because Cooper had a role in using the trust assets for a purpose other payment to the trust beneficiaries, Cooper is secondarily liable for breach of fiduciary duty.

The court concludes that there is no triable issue of material fact as to the breach of fiduciary duty claim against Cooper. Accordingly, the court grants summary judgment in favor of Monterey Mushrooms on Count VI of the Complaint-in-Intervention.

### c. Unlawful Receipt of PACA Trust Assets

Cooper moves for summary judgment on the claim of unlawful receipt of PACA trust assets. (Cooper MSJ at 11.) Cooper argues that unlawful receipt of PACA trust assets is "only applicable to third parties, not individuals who are considered PACA trustees . . ." (*Id.*) Monterey Mushrooms contends that Cooper can be liable as a third-party recipient of assets, specifically, receiving salary and wages. However, as discussed

12

above, Cooper is a PACA trustee, not a third party. The court has been unable to find, and Monterey Mushrooms has failed to provide, any authority supporting Monterey Mushrooms theory of liability. Thus, the unlawful receipt of PACA trust assets fails as a matter of law. The court grants summary judgment in favor of Cooper on Count VII of the Complaint-in-Intervention.

### B. Attorneys' fees and Interest

The parties appear to agree that in the Ninth Circuit, attorneys' fees and pre-judgment interest are recoverable in PACA trust claims if provided for by contractual agreement. *Middle Mountain Land & Produce Inc. v. Sound Commodities Inc.*, 307 F.3d 1220, 1222-23 (9th Cir. 2002). The terms of the invoices here provided for payment of interest on any past-due balances at the rate of 1.5% per month (18% per annum), or the maximum amount allowed by law. The invoices also provided the additional terms for payment of Monterey Mushrooms' attorneys' fees and costs in the event of any action to enforce the terms of the agreements.

Cooper Cold Foods does not dispute that these additional terms were terms on the face of the invoices and that it did not object to the additional terms. Instead, Cooper Cold Foods opposes attorneys' fees and interest in this case based on waiver and modification through conduct. (*See* Cooper Opp. at 11.) However, Cooper Cold Foods' evidence of waiver and modification consists of Cooper's declaration in which he states that "Because of the length of their ongoing business relationship, Monterey would often allow Cooper Cold Foods to make payments outside of the 'stated terms' on Monterey's invoices. Monterey regularly allowed Cooper Cold Foods to make payments that were late and for less than the full amount owed." (Cooper Decl. ¶ 7.) This conclusory, single statement is insufficient to create a triable issue of fact.

The court concludes that Monterey Mushrooms is entitled to attorneys' fees and costs, and pre-judgment interest.

///

### C. Breach of Contract

To establish breach of contract under California law, Monterey Mushrooms must satisfy four elements: (1) the existence of a contract; (2) Monterey Mushrooms' performance or excuse for nonperformance; (3) Cooper Cold Foods' breach; and (4) the resulting damages to Monterey Mushrooms. *Glob. Hawk Ins. Co. (RRG) v. Wesco Ins. Co.*, 424 F. Supp. 3d 848, 853 (C.D. Cal. 2019). As discussed above, Cooper Cold Foods does not dispute that a contract existed, that Monterey Mushrooms delivered the agreed upon produce, and that Cooper Cold Foods' failed to provide payment for the produce. The undisputed evidence establishes that Cooper Cold Foods breached its contract with Monterey Mushrooms.

The court grants summary judgment in favor of Monterey Mushrooms on Count I of the Complaint-in-Intervention.

### IV. CONCLUSION

For the reasons stated above, the court grants Monterey Mushrooms' motion for summary judgment in its entirety, and grants Cooper's motion for summary judgment as to Count VII of the Complaint-in-Intervention and denies Cooper's motion for summary judgment as to all other claims.

**IT IS SO ORDERED.**

Dated:   August 9, 2021

_____

DEAN D. PREGERSON

UNITED STATES DISTRICT JUDGE